UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

VIRGIL GREEN,

         Plaintiff,              Case No. 2:20-cv-45

v.                               Honorable Janet T. Neff

H. ANDERSON et al.,

         Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Unknown O'Brien and John McCellum. The Court will also dismiss for failure to state a claim the following claims against remaining Defendant H. Anderson: any claim for a First Amendment or RLUIPA violation implicated by Anderson's alleged interference with Plaintiff's religious meal; and any claim for a Fourteenth Amendment substantive due process violation or for the state law tort of intentional infliction of emotional distress suggested by Plaintiff's claim

that Anderson's actions were extreme and outrageous. Plaintiff's claim against Defendant Anderson for First Amendment retaliation remains.

## Discussion

### I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan. The events about which he complains occurred at that facility. Plaintiff sues URF Corrections Officer H. Anderson, Hearings Officer Unknown O'Brien, and URF hearings investigator John McCellum.

Plaintiff alleges that on November 14, 2019, he was going through the chow hall line. As he approached Defendant Anderson to have his identification scanned for his meal, he stepped over to the right side of the chow hall to retrieve his religious meal. Defendant Anderson told him to step back to where he had been and not to cut the line. Plaintiff told Anderson that he was on the religious meal menu and needed to pick up his meal on the right side. Plaintiff claims Anderson became irate. As Plaintiff attempted to explain further, she instructed him to "shut up" using profanity. Plaintiff informed her he intended to file a grievance. Anderson then signaled to other officers who handcuffed Plaintiff and escorted him to segregation.

Anderson wrote a misconduct report against Plaintiff for threatening behavior, a Class I misconduct. The report was investigated by Defendant McCellum. Plaintiff explained to McCellum that the misconduct was retaliatory and false, but McCellum did nothing to correct the problem. On November 19, 2019, Defendant O'Brien conducted the hearing. He found Plaintiff guilty and sanctioned him to 30 days top-lock to be served on the east side of URF, which Plaintiff reports is a disciplinary/limited movement unit.

Plaintiff seeks declaratory relief and compensatory and punitive damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

3

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff's allegations, liberally construed, attempt to state claims for violation of his First Amendment and Fourteenth Amendment rights.

### III.    Immunity

Plaintiff alleges that Defendant O'Brien violated Plaintiff's constitutional rights in O'Brien's role as a hearings officer. The Sixth Circuit, recognizing that a Michigan hearings officer has adjudicatory functions spelled out by statute in the nature of an administrative law judge, has held that hearings officers are entitled to absolute judicial immunity from damages in relation to actions within the officer's authority. *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); Mich. Comp. Laws §§ 791.251-255. *See also Williams v. McGinnis*, Nos. 02-1336, 02-1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003) (recognizing that Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Mich. Dep't of Corr.*, No. 01-1943, 2002 WL 22011, at *1 (6th Cir. Jan. 2, 2002) (same); *Gribble v. Bass*, No. 93-5413, 1993 WL 524022, at *2 (6th Cir. Dec. 16, 1993) (same). Plaintiff's allegations against Defendant Hearings Officer O'Brien fail because he is absolutely immune from suit for damages under the circumstances of this case.[1]

### IV.    Due process

Plaintiff claims that his due process rights were violated by his misconduct conviction. Plaintiff claims that the major misconduct charges against him were "false" and that Defendants McCellum and O'Brien denied Plaintiff his right to present evidence.

---

[1] Judicial immunity plainly bars a claim for damages. Judicial immunity also bars any claim for retrospective declaratory relief. *See Ward v. City of Norwalk*, 640 F. App'x 462, 468 (6th Cir. 2016) ("Plaintiffs' declaratory judgment claim, however, is actionable only to the extent it seeks prospective relief.") (citing *Quern v. Jordan*, 440 U.S. 332, 338 (1979)). Plaintiff's request for declaratory relief is retrospective and, thus, barred by judicial immunity. (Compl., ECF No. 1, PageID.6) ("Issue a declaratory judgment that Defendant's acts . . . violated Plaintiff's rights . . . .").

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

Plaintiff's major misconduct charge and conviction affected Plaintiff's interests, but none of those interests fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an

5

indeterminate sentence for an offense committed after 2000,[2] can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." Plaintiff asserts that he was placed on 30 days top-lock in a segregation unit. Plaintiff's "top-lock" status limits his activities.[3]

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). It has also held,

---

[2] Plaintiff is serving a string of consecutive sentences, some of which predate disciplinary time. The only unexpired sentence that remained when he allegedly threatened Defendant Anderson, however, was for criminal conduct committed after 2000.

[3] MDOC Policy Directive, 03.03.105 (Eff. 7/1/2018) ("A prisoner on toplock is restricted to his/her own cell, room, or bunk and bunk area.")

6

in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

Plaintiff's confinement in segregation on top-lock status for 30 days is less than the 60-day period in *Joseph* that the Sixth Circuit held was *not* atypical and significant. Thus, Plaintiff's confinement did not trigger a right to due process.

Moreover, even if Plaintiff's misconduct conviction changed his placement or security classification, it would not implicate his procedural due process rights. "[A]n inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State . . . ." *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *see also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). A change in security classification to a higher level of security, with nothing more, is not the type of atypical and significant deprivation in which an inmate might have a liberty interest. *See Sandin*, 515 U.S. at 485-86 (1995); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997).

For all these reasons, Plaintiff's due process claims are properly dismissed.

## V. Active unconstitutional behavior

Plaintiff's allegations against Defendant McCellum might be read to extend beyond a due process violation for McCellum's role in the misconduct hearing process. Plaintiff seems to suggest that McCellum might be liable for failing to correct Defendant Anderson's allegedly improper conduct.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, any suggestion that Defendant McCellum failed to correct Defendant Anderson's allegedly unconstitutional conduct fails to state a claim against McCellum.

## VI. First Amendment retaliation

Plaintiff contends Defendant Anderson retaliated against him for threatening to file a grievance against her, in violation of Plaintiff's First Amendment rights. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment

retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Upon preliminary review, the Court concludes that Plaintiff has adequately alleged a First Amendment retaliation claim against Defendant Anderson.

**VII.     Free exercise of religion**

Plaintiff alleges that Defendant Anderson interfered with Plaintiff's right to obtain one religious meal. That claim implicates Plaintiff's rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA). The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d

9

1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Plaintiff has sufficiently alleged his sincerely held religious beliefs and there is no doubt that the practice of following a religious diet is a religious practice. The next consideration is "whether the challenged practice of the prison officials infringes on the religious belief . . . ." *Kent*, 821 F.2d at 1224-25. A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice . . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015) (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a substantial burden on the inmate's exercise of religion.").

"[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. Of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. "'[A] 'substantial burden' must place more than an inconvenience on religious exercise.'" *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult . . . ." *Id*.

The analysis of Plaintiff's RLUIPA claim parallels the analysis of his free exercise claim. In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term "religious

exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7).

The phrase "substantial burden" is not defined in RLUIPA.  The Sixth Circuit Court of Appeals has relied upon the Act's legislative history to conclude that the term has the same meaning under RLUIPA as provided by the Supreme Court in its "free exercise" decisions.  *Living Water*, 258 F. App'x at 733-34.  Accordingly, a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs."  *Id.* (citations omitted); *Cutter v. Wilkinson,* 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise); *Marshall v. Frank*, 2007 WL 1556872, at *5 (W.D. Wis. May 24, 2007) (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003)) (a substantial burden is one which renders religious exercise "effectively impracticable")).

A burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *see, e.g., Konikov v. Orange County, Florida*, 410 F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs."  *Living Water*, 258 F. App'x at 734.  Such conclusions recognize that RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word "substantial."  *See Civil Liberties for Urban Believers*, 342 F.3d at 761.  For that reason, the courts have determined that "[i]solated acts or omissions . . . do not constitute a substantial burden on religious freedom."  *Mubashshir v. Moore*, No. 3:10-cv-2802, 2011 WL 1496670, at *6 (N.D. Ohio Apr. 19, 2011) (collecting cases); *see also Colvin*, 605 F.3d at 293-294 (court held that "isolated incidents of . . . serving . . . nonkosher food" with no

showing of intent were "not sufficient to sustain his [free exercise] claim . . . ."); *Pleasant-Bey v. Tenn. Dep't or Corr.*, No. 18-5424, slip op. at 6-7 (6th Cir. Apr. 4, 2019) (five instances of late meal deliveries during Ramadan that deprived the plaintiff of eating those meals and one day of no meals at all was not a substantial burden). Plaintiff's claim that Defendant Anderson interfered with one religious meal, therefore, does not support the inference that the free exercise of his religion was substantially burdened. Therefore, he has failed to state a First Amendment or RLUIPA claim based on missing one meal.

## VIII. Substantive due process

Plaintiff's description of Anderson's conduct as "extreme and outrageous" might be an attempt to invoke the protections of substantive due process. "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002). "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).

"Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v.*

*Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, at *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

"Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

To the extent that Plaintiff claims that Defendant Anderson violated his substantive due process rights by retaliating against him, the First Amendment provides an explicit textual source of constitutional protection for Plaintiff's claim. Thus, the standard applicable to that source, the First Amendment right to be free from retaliation, and not the more generalized notion of substantive due process should be applied. *Graham*, 490 U.S. at 395; *see also Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (holding that, after *Graham*, the First Amendment standard is the sole source of substantive protection); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (A "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim.").

Moreover, to the extent that Plaintiff claims that Defendant acted arbitrarily in issuing the misconduct ticket, his allegations fail to rise to the level of a substantive due process violation. While Defendant Anderson may have inaccurately described Plaintiff's response to her

commands as threatening, she did not fabricate or plant evidence. *See Cale*, 861 F.2d at 950. Nothing about Defendant Anderson's alleged conduct either shocks the conscience or constitutes an egregious abuse of governmental power. *Id.*; *see also Davis*, 2016 WL 7403941, at *4; *Robinson*, 2007 WL 4454293. Plaintiff therefore fails to state a substantive due process claim.

## IX. Intentional infliction of emotional distress

Intentional infliction of emotional distress requires four elements under Michigan law: "(1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress." *Ruffin-Steinback v. dePasse*, 267 F.3d 457, 464 (6th Cir. 2001) (citing *Andrews v. Prudential Secs., Inc.*, 160 F.3d 304, 309 (6th Cir. 1998)). "Liability for such a claim has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Dotson v. Norfolk S. R.R. Co.*, 52 F. App'x 655, 660 (6th Cir. 2002) (quoting *Teadt v. St. John's Evangelical Church*, 603 N.W.2d 816, 823-24 (Mich. Ct. App. 1999). Michigan law does not permit recovery when "mere insults, indignities . . . or other trivialities" occur as there "is no occasion for the law to intervene in every case where some one's feelings are hurt." *Roberts v. Auto–Owners Ins. Co.*, 374 N.W.2d 905, 909 (Mich. 1985).

Here, Plaintiff labels Anderson's conduct as "extreme" and "outrageous," but he provides no factual allegation regarding her conduct that satisfies the pleading standards identified above. For the same reasons Plaintiff has failed to state a claim for violation of his substantive due process rights, he has failed to state a claim for intentional infliction of emotional distress.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants O'Brien and McCellum will be dismissed for failure to state a

claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's claims against Defendant Anderson for violation of the First Amendment Free Exercise Clause, RLUIPA, the Fourteenth Amendment's substantive due process protection, and the state tort of intentional infliction of emotional distress. Plaintiff's First Amendment retaliation claim against Defendant Anderson remains in the case.

An order consistent with this opinion will be entered.


Dated: April 22, 2020                    /s/ Janet T. Neff
                                         Janet T. Neff
                                         United States District Judge